IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THOMAS KOEHN,

Plaintiff,

vs. Case No. 13-1155-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On March 14, 2012, administrative law judge (ALJ) Timothy J. Christensen issued his decision (R. at 10-19). Plaintiff alleges that he had been disabled since June 24, 2009 (R. at 10). Plaintiff is insured for disability insurance benefits through December 31, 2015 (R. at 12). At step one, the ALJ

found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 12). At step two, the ALJ found that plaintiff had the following severe impairments: status post-surgery for cancerous kidney, arthritis in feet, bilateral carpal tunnel syndrome, sleep apnea with chronic fatigue, degenerative disc disease of the spine, fibromyalgia, anxiety disorder, depressive disorder (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment R. at 13). After determining plaintiff's RFC (R. at 15-16), the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 18). At step five, the ALJ found that plaintiff could perform work that exists in significant numbers in the national economy (R. at 18-19). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III. Did the ALJ err in his credibility analysis?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence

favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ's RFC findings limited plaintiff to light work, only occasional performance of postural activities, occasional fingering, avoiding concentrated exposure to noise and vibration, performing no more than simple, routine, tasks, and tolerating no more than occasional changes in the workplace setting (R. at 15-16).

Concerning plaintiff's credibility, the ALJ stated the following:

This residual functional capacity assessment adequately addresses the claimant's physical and mental impairments. The claimant's arthritis, carpal tunnel syndrome, and degenerative disc disease limit the claimant's exertional abilities. The claimant's carpal tunnel syndrome limits his ability to perform more than occasional fingering. The claimant's fibromyalgia with chronic fatigue prevents the claimant from working in certain environmental conditions. The claimant's degenerative disc disease and fibromyalgia limit his ability to perform postural activities. The claimant's mental impairments limit his ability to perform complex tasks or work in a rapidly changing environment.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The evidence shows the claimant has many severe impairments, but they are fairly mild and the claimant has not sought more than conservative treatment for any of them outside the 2008 kidney surgery. The claimant credibly testified that he cannot lift over fifty pounds due to back pain and can walk at least one mile. The claimant testified he has problems with hand cramping, but states can play guitar and keyboard, go fishing, and use a vacuum cleaner. The claimant testified he watches television all day, and later that he listens to the radio all day. The claimant then stated he spends all day sleeping, alleging he requires eleven or twelve hours of sleep a night to function. The claimant's statements that he performs each of these activities all day shows a definite tendency to exaggerate. The claimant acted

> appropriately during the hearing and admitted he rarely has problems with fatigue while driving, which further calls into question the alleged severity of the claimant's fatigue. (8F3, hearing testimony) The claimant has also been inconsistent in his statements regarding his ability to clean his house, do yard work, or home repair. ( 4E, 8El, lOE, 12E, llF) The undersigned does not find the claimant's statement that he requires eleven or twelve hours of sleep to function to be fully credible. The undersigned finds the objective and subjective evidence of record does not fully support the claimant's allegations. Based on this evidence, the undersigned does not find the claimant's allegations more convincing than the medical opinions and other evidence of record.

(R. at 16-17).

The ALJ gave great weight to the opinions of the consultative examiner, Dr. Simmonds regarding plaintiff's mental impairments (R. at 427-429, 17). The ALJ also gave great weight to the physical RFC assessment by Dr. Parsons and Dr. Cole (R. at 437-444, 506-507) and the mental RFC assessment by Dr. Schulman and Dr. Biscardi (R. at 454-470, 505, 17). The ALJ gave little weight to the opinions of Dr. Davison (R. at 17). Plaintiff does not take issue with the relative weight that the ALJ gave to the medical source opinions.

Plaintiff takes issue with the ALJ's assertion that plaintiff had "fairly mild" symptoms, that plaintiff sought only "conservative treatment," that the ALJ listed various daily activities that plaintiff engaged in, that the plaintiff made

inconsistent statements, and with the ALJ's observation that plaintiff acted appropriately during the hearing and rarely had problems with fatigue while driving. Plaintiff also asserts that the ALJ should have considered plaintiff's earnings record.

Regarding plaintiff's daily activities, the ALJ simply noted certain daily activities; the ALJ did not expressly rely on them as a basis for finding that plaintiff could work. Although minimal activities of daily living do not constitute substantial evidence that a claimant does not suffer disabling pain, the ALJ may consider activities of daily living as part of his evaluation of a claimant's credibility. The ALJ did not solely rely on claimant's activities of daily living, but instead evaluated them as part of his credibility analysis. Zaricor-Ritchie v. Astrue, 452 Fed. Appx. 817, 823 (10th Cir. Dec. 15, 2011). For this reason, the court finds no error by the ALJ in his mention of certain daily activities by the plaintiff. For the same reason, the ALJ's reference to plaintiff's behavior during the hearing was not error because it may also be considered as part of the credibility analysis.

Plaintiff also asserts that the ALJ should have considered plaintiff's earnings records. However, plaintiff has failed to cite to any case law or regulation requiring the ALJ to consider a claimant's past consistent work history when making a credibility determination. See Bolan v. Barnhart, 212 F.

Supp.2d 1248, 1261 (D. Kan. 2002). As noted above, the court does not require a formalistic factor-by-factor recitation of the evidence so long as the ALJ sets forth the specific evidence he relied on in evaluating plaintiff's credibility.

As noted above, the ALJ gave great weight to the opinions of Dr. Parsons. Dr. Parsons concluded his narrative discussion as follows:

> The totality of the medical and non-medical evidence in file indicates clmt does have MDIs [medically determinable impairments] that are the reasonable cause of Sxs of fatigue. This allegation is credible. Despite this fatigue, clmt cares for himself and his residence, shops, entertains himself, and visits friends and family weekly or bimonthly. Limitations alleged are out of proportion to the level of activity shown, and are thus partially credible. Clmt is able to sustain activity as reflected in this RFC

(R. at 444, emphasis added). Dr. Schulman's narrative concluded as follows:

> Allegations are considered credible but the extent to which they limit his cognitive abilities and function does not preclude all activity. Impairments result in moderate limits to CP&P [concentration, persistence, pace] but mild limits to ADL's [activities of daily living] and socialization.

(R. at 466).

The ALJ found that plaintiff's statements concerning her symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC findings. Those RFC findings

are consistent with the opinions rendered by Dr. Parsons and Dr. Schulman. Dr. Parsons, after reviewing the medical evidence and statements of plaintiff and other witnesses, found that plaintiff's limitations are out of proportion to plaintiff's level of activity, and were thus only partially credible (R. at 444). Dr. Schulman, after reviewing the medical evidence and statements of the plaintiff, also opined that plaintiff's allegations were only credible to the extent that they resulted in limitations set out in his mental RFC assessment (R. at 466). The ALJ could reasonably rely on the evidence from Dr. Parsons and Dr. Schulman to find that plaintiff was credible only to the extent that plaintiff's limitations limited him as set forth in the opinions of Dr. Parsons and Dr. Schulman, and as established by the ALJ in his RFC findings for the plaintiff.

It is not clear from the ALJ's opinion what is the basis for his finding that plaintiff's impairments are fairly mild or that plaintiff sought no more than conservative treatment. The ALJ also failed to indicate how some of the statements cited were inconsistent (regarding his ability to clean house, do yard work, home repair); however, the ALJ did find an inconsistency with problems with hand cramping at the same time plaintiff stated he played the guitar and keyboard, went fishing and used a vacuum cleaner (R. at 8-9). While the court has some concerns regarding the ALJ's reliance on these factors, the court

concludes that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record. Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)( "While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record"). The ALJ's credibility analysis is clearly linked to the opinions of Dr. Parsons (affirmed by Dr. Cole), and Dr. Schulman (affirmed by Dr. Biscardi). For this reason, the court finds that substantial evidence supports the ALJ's credibility analysis.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 13th day of August 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge